E-filed: February 22, 2019

Constance L. Young, Esq. *(pro hac vice pending)*
Bar Nos. NC #16115, SC #100432, GA #141841
WOMBLE BOND DICKINSON – US, LLP
One Wells Fargo Center, Suite 3500
301 South College Street
Charlotte, NC 28202
Telephone:  (704) 331-4972
Facsimile:  (704) 331-4955

Robert R. Kinas (NV Bar No. 6019)
Blakeley E. Griffith (NV Bar No. 12386)
Charles E. Gianelloni (NV Bar No. 12747)
SNELL & WILMER L.L.P.
3883 Howard Hughes Parkway, Suite 1100
Las Vegas, Nevada 89169
Telephone: (702) 784-5200
Facsimile: (702) 784-5252
Email: rkinas@swlaw.com
       bgriffith@swlaw.com
       cgianelloni@swlaw.com

*Attorneys for Green Energy Concepts, Inc.*

# UNITED STATES BANKRUPTCY COURT

# DISTRICT OF NEVADA

| | |
|---|---|
| In Re:<br><br>DOUBLE JUMP, INC.,<br><br>Affects:<br>☐ All Debtors<br>☐ Double Jump, Inc. (19-50102-btb<br>☐ Dora Dog Properties, LLC (19-50103-btb)<br>☐ Dog Blue Properties, LLC (19-50104-btb)<br>☐ Brandy Boy Properties, LLC (19-50105-btb)<br>☐ 475 Channel Road, LLC (19-50106-btb)<br>☐ Park Road, LLC (19-50108-btb)<br>☐ 140 Mason Circle, LLC (19-50109-btb)<br>☒ DC Solar Solutions, Inc. (19-50130-btb)<br>☐ DC Solar Distribution, Inc. (19-50131-btb)<br>☐ DC Solar Freedom, Inc. (19-50135-btb)<br><br>                  Debtors. | Case No. 19-50102-btb – LEAD CASE<br><br>Chapter 11<br><br>Jointly administered<br><br>**Adversary Proceeding No.** _____<br><br>**COMPLAINT TO RECOVER PROPERTY FROM DEBTOR PURSUANT TO §541(d) AND EMERGENCY REQUEST FOR IMMEDIATE TURNOVER OF PROPERTY AND MOTION FOR A TEMPORARY RESTRAINING ORDER AND INJUNCTION** |
| GREEN ENERGY CONCEPTS, INC.,<br><br>                  Plaintiff,<br><br>v.<br><br>DC SOLAR SOLUTIONS, INC.,<br><br>                  Defendant. | |

4834-5206-1577

Green Energy Concepts, Inc. ("Green Energy" or "Plaintiff"), by and through its undersigned counsel and pursuant to §541(d), common law fraudulent inducement, failure of consideration, unilateral mistake and rescission and Rule 7001 of the Federal Bankruptcy Procedure, respectfully submit this Complaint asking that the Court determine that the Debtor fraudulently induced Plaintiff to ship batteries, without ever intending to pay for them, that Plaintiff is entitled to rescission and that all batteries identified in exhibit 6 should immediately be returned to Plaintiff. Alternatively, Plaintiff seeks the imposition of an equitable lien.

## JURISDICTION

1. On February 4, 2019 (the "Petition Date"), DC Solar Solutions, Inc. ("DC Solar" or "Debtor") filed its Chapter 11 Petition in this case.

2. Green Energy is a North Carolina corporation that is a creditor of the Debtor, who was defrauded by the Debtor.

3. Green Energy is owed approximately $5.2 million by the Debtor.

4. This Court has jurisdiction over the proceeding pursuant to 28 U.S.C. 1334 and 28 U.S.C. § 157(a) and the Referral Order from the United State District Court for the District of Nevada.

5. This is a core proceeding under 28 U.S.C. 157(b)(2)(A) and 157 (b)(2)(O).

6. Venue lies in this district pursuant to 28 U.S.C. 1409(a) in that the instant adversary proceeding is related to the above-captioned case under the Bankruptcy Code, which is still pending. The Court has authority to enter final judgment on all claims asserted in this Complaint.

## PARTIES

7. Plaintiff is a corporation organized and existing under the laws of North Carolina, with its principal place of business in Charlotte, North Carolina.

8. Debtor is a California corporation with locations in Nevada and California.

///

**FACTUAL BACKGROUND**

9. Green Energy is a national leader in the design, manufacture and delivery of motive power charger technology, modular charger technology, tubular battery technology and lithium ion battery technology.

10. Debtor designs, manufactures and leases renewable energy products, including mobile solar generators ("MSG").

11. The Debtor's business model was that the Debtor would assemble MSGs, which it then sold to an investment pool. An affiliate of the Debtor, Solar Distributions, Inc. ("Solar Distribution"), would then lease the MSG's to end users, manage that relationship and collect the rents.

12. The Debtor, and its affiliates have obtained investors by touting various tax benefits from investing in these investment pools, including solar energy tax credits and depreciation on the MSGs.

13. According to the Declaration of Special Agent Christopher Phillips in Support of *In Rem* Forfeiture Complaint ("Special Agent Declaration"), Solar Distributors barely generated enough lease income to pay the money owed to investors. *See para. 16 of Special Agent Declaration [Dkt. 106-2]*. That would leave little or no money for the Debtor to pay its legitimate obligations to vendors and others, including Green Energy.

14. In fact, the FBI has labeled the ongoing operation of the Debtor and affiliates as a Ponzi-type investment fraud scheme. *See para. 17 of Special Agent Declaration [Dkt. 106-2]*.

15. From 2016 until the summer of 2018 Green Energy negotiated directly with Jeff Carpoff and others for the purchase and sale of batteries to be used in the Debtor's MSGs. *See* Affidavit of Thomas Valentini attached hereto as **Exhibit 1** ("Valentini Affidavit").

16. Representatives from Green Energy made trips to California to meet with Jeff Carpoff and others and had many phone conferences and exchanged many emails.

17. On or about July 9, 2018, Jeff Carpoff, on behalf of and as President of DC Solar, ordered 5000 batteries from Green Energy. *See* email dated July 9, 2018 attached hereto as **Exhibit 2**.

1	18.	On or about, August 10, 2018, Green Energy provided a sales quotation containing ramp up and delivery schedule. *See* Sales Quotation attached hereto as **Exhibit 3**.

19.	The sales quote was directed to DC Solar Solutions and the total purchase price for 5000 batteries was $20,945,000.00. *Id.*

20.	After providing the quote, Jeff Carpoff, on behalf of and as President of DC Solar, requested that Green Energy resend the quote with: "Panda Bear International, Limited as the purchaser and we will get the PO out right away." *See* email from Jeff Carpoff from DC Solar dated August 10, 2018, attached hereto as **Exhibit 4**.

21.	Previously, in Jeff Carpoff's email to Green Energy dated July 9, 2018, Jeff stated that the P.O. will be coming from our partner company "Panda Solar Solutions LTD." *See* email dated July 9, 2018, Exhibit 2.

22.	On September 26, 2018 the Debtor supplied a purchase order ("Purchase Order") ostensibly from Panda Bear International Limited ("Panda Bear") requesting that 5000 private label batteries be shipped to Panda Bear at the Debtor's address at 4901 Park Road in Benicia, California 94510. A true and correct copy of the Purchase Order is attached hereto as **Exhibit 5**.

23.	The batteries purchased by DC Solar from Green Energy were specially manufactured to DC Solar's specific specifications. *See* Valentini Affidavit, Exhibit 1.

24.	Green Energy shipped batteries to essentially three locations. Batteries were shipped to Xtreme Manufacturing in Henderson, Nevada; to US Tower in Woodlake, California; and to the Debtor in Benicia, California. True and correct copies of the invoices are attached hereto as **Exhibit 6**.

25.	The Debtor made no payments to Green Energy for the batteries.

26.	The Debtor never intended to make payments to Green Energy for the batteries as can be seen through the Debtor's attempt to shift liability for its contractual obligations to Panda Bear and through its operation of a Ponzi scheme.

27.	Upon information and belief, Panda Bear is not an affiliate of the Debtor and Jeff Carpoff did not have the authority to obligate Panda Bear for the batteries.

4834-5206-1577

28. Nine Hundred Twenty-Three (923) batteries are sitting at the Xtreme Manufacturing location. Upon information and belief, of that number, 148 are just sitting on pallets, segregated and unmodified. The remainder of them (775) have been incorporated into MSG's. *See* Valentini Affidavit, Exhibit 1

29. Plaintiff shipped 189 batteries to the US Tower location and 171 to the Debtor's location.

30. Even the batteries that have been incorporated into the MSG are easily removable. *See* Valentini Affidavit, Exhibit 1

31. The batteries are perishable. Unless the batteries are charged and discharged they will begin to harden and become worthless. Therefore, immediate action is required to protect the batteries. *See* Valentini Affidavit, Exhibit 1.

32. Upon information and belief, the Debtor is not taking this action to protect the batteries. *See* Valentini Affidavit, Exhibit 1.

### COUNT ONE

### FRAUDULENT INDUCEMENT

33. Plaintiff incorporates the allegations set forth in paragraphs 1 – 32 as if fully set forth herein.

34. The Debtor fraudulently induced Plaintiff into supplying batteries for its use in assembling MSGs.

35. The Debtor never intended to pay Plaintiff for the batteries it supplied.

36. The Debtor's representation that it would pay for the batteries was a material term to the agreement.

37. As a result of Debtor's fraudulent inducement, Plaintiff is entitled rescission of the contract and the immediate return of its batteries as well as damages as will be reflected in Plaintiff's proof of claim.

### COUNT TWO

### UNILATERAL MISTAKE

38. Plaintiff incorporates paragraphs 1 – 37 as if set fully set forth herein.

4834-5206-1577

39. Plaintiff believed that it was entering into a contract with the Debtor, not with Panda Bear International, Limited. *See* Valentini Affidavit, Exhibit 1.

40. Plaintiff believed that Panda Bear International, Limited was a subsidiary of the Debtor. *See* Valentini Affidavit, Exhibit 1.

41. Plaintiff never intended to contract with Panda Bear. *See* Valentini Affidavit, Exhibit 1.

42. This mistake is material and goes to the heart of the contract, specifically, to who would be required to perform.

43. As a result of Plaintiff's mistake, Plaintiff is entitled to rescission of the contract and return of its batteries as well as damages as will be reflected in Plaintiff's proof of claim.

## COUNT THREE

## FAILURE OF CONSIDERATION

44. Plaintiff incorporates the allegations contained in paragraphs 1 – 43 as if fully set forth herein.

45. Debtor attempted to substitute Panda Bear as the purchaser of the batteries claiming that Panda Bear was somehow affiliated with the Debtor.

46. Upon information and belief, the Debtor has no affiliation with Panda Bear and Plaintiff has no evidence that the Debtor or its principals had the authority to obligate Panda Bear. *See* Valentini Affidavit, Exhibit 1.

47. Debtor failed to promise to perform its end of the bargain, in paying the price for the batteries, which are perishable.

48. This constitutes a total failure of consideration.

49. Plaintiff is entitled to rescind the contract based on the total failure of consideration and is entitled to the return of its batteries as well as damages that will be reflected in Plaintiff's Proof of Claim.

///

## COUNT FOUR

## *LEGAL OR EQUITABLE LIEN*

50. Plaintiff incorporates the allegations contained in paragraphs 1 – 49 above as if set forth herein.

51. The invoices sent by Plaintiff to Defendant by email and US mail contains a grant of a security interest on the back of each invoice. *See* invoices, Exhibit 6.

52. Plaintiff filed a UCC on January 22, 2019. A true and correct copy of the acknowledgment of the filed UCC from the California Secretary of State is attached hereto as **Exhibit 7**.

53. These actions show evidence to create a lien by Plaintiff and Defendant.

54. Plaintiff was defrauded by Defended into putting Panda Bear's name on the invoices.

55. Plaintiff and Defendant intended that Plaintiff have a lien on the product shipped to Debtor.

56. Plaintiff is entitled to a legal and/or equitable lien on the batteries because otherwise, the Debtor will be unjustly enriched by obtaining Plaintiff's property on the basis of fraud, unilateral mistake or otherwise.

## COUNT FIVE

## *EMERGENCY MOTION FOR IMMEDIATE TURNOVER OF PROPERTY*

57. Plaintiff incorporates the allegations contained in paragraphs 1 – 51 as if fully set forth herein.

58. The batteries, which were procured by the Debtor by fraud, will decline rapidly in value, if immediate action is not taken. *See* Valentini Affidavit, Exhibit 1.

59. The batteries have a short shelf life and must be charged and discharged frequently or the lead and other active materials begin to harden. *See* Valentini Affidavit, Exhibit 1.

60. Failure to take these precautions results in quick degradation, until it the batteries become useless. *See Valentini Affidavit.*

61. Plaintiff may be able to obtain value from the batteries if it is able to immediately retake possession of them.

62. Removing batteries from each trailer would only take approximately 10 minutes. A few wires must be disconnected, then each battery must be removed from the MSG, much like a car battery. Each MSG has two batteries. No damage occurs to the MSG in removing the batteries. *See Valentini Affidavit.*

63. Upon information and belief, representatives of Xtreme stand ready and willing to turn the batteries in Xtreme's possession over to the Plaintiff with a proper Order from this Court.

64. Wherefore, Plaintiff is entitled to immediate possession of the batteries.

## COUNT SIX

### *MOTION FOR TEMPORARY RESTRAINING ORDER*

65. Plaintiff incorporates the allegations set forth in paragraphs 1 – 64 as set forth herein, including all exhibits and Affidavits.

66. As shown in the Affidavit of Thomas Valentini and the prior allegations, immediate and irreparable injury, will be suffered by Plaintiff if it is unable to obtain the return of its batteries and if it is not able to prevent the Debtor from disposing of any of the batteries shipped by Plaintiff.

67. Plaintiff is entitled to a Temporary Restraining Order to prevent the disposition of any of its batteries and moves this Court, pursuant to Bankruptcy Rule 7065 for a Temporary Restraining Order.

## COUNT SEVEN

### *MOTION FOR PRELIMINARY INJUNCTION*

68. Plaintiff incorporates the allegations contained in paragraphs 1 – 67 as if fully set forth herein.

69. As shown in the prior allegations and the Affidavit of Thomas Valentini, Plaintiff will suffer injury if the Debtor is allowed to dispose of the batteries or MSR's containing batteries prior to the conclusion of this litigation.

4834-5206-1577

70.     Plaintiff is entitled to a Preliminary Injunction to maintain the status quo until the conclusion of this matter and moves this Court, pursuant to Bankruptcy Rule 7065 for a Preliminary Injunction.

WHEREFORE, Plaintiff prays as follows:

A.     For an Order granting rescission of any contract between Plaintiff and Defendant;

B.     For an Order allowing Plaintiff to take immediate possession of its batteries, wherever located;

C.     For a Temporary Restraining Order prohibiting Debtor from disposing of batteries shipped to Debtor, or its manufacturers, that remain under its control;

D.     For a Preliminary Injunction prohibiting Debtor from disposing of batters shipped to Debtor, or its manufacturers, that remain under its control;

E.     For damages as will be reflected in Plaintiff's proof of claim; and

F.     For such other relief as this court deems just and proper.

DATED this 22nd day of February 2019.

SNELL & WILMER L.L.P.

By:  /s/ Robert R. Kinas
Robert R. Kinas (NV Bar No. 6019)
Blakeley E. Griffith (NV Bar No. 12386)
Charles E. Gianelloni (NV Bar No. 12747)
3883 Howard Hughes Parkway, Suite 1100
Las Vegas, Nevada 89169
Telephone:  (702) 784-5200
Facsimile:  (702) 784-5252

Constance L. Young, Esq. *(pro hac vice pending)*
Bar Nos. NC #16115, SC #100432, GA #141841
WOMBLE BOND DICKINSON – US, LLP
One Wells Fargo Center, Suite 3500
301 South College Street
Charlotte, NC 28202
Telephone:  (704) 331-4972
Facsimile:  (704) 331-4955

*Attorneys for Green Energy Concepts, Inc.*

4834-5206-1577